**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jennifer Edwards</u>

                                  Case No. 19-cv-510-PB

        v.                         Opinion No. 2019 DNH 214

<u>Andrew Saul,[1] Commissioner,</u>
<u>Social Security Administration</u>

<u>**MEMORANDUM AND ORDER**</u>

Jennifer Edwards challenges the denial of her claims for
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),
respectively. She contends that the Administrative Law Judge
("ALJ") erred by (1) failing to give proper weight to the
opinion of an examining physician; (2) failing to give proper
weight to the opinion of Edwards's treating physician; and (3)
failing to properly consider whether Edwards's impairments met
or equaled Listing 1.02 or 1.04. 20 C.F.R. Pt. 404, Subpt. P,
App. 1. The Commissioner, in turn, moves for an order affirming

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of
Social Security. Pursuant to Fed. R. Civ. P. 25(d), he
automatically replaces the nominal defendant, Nancy A.
Berryhill, who had been Acting Commissioner of Social Security.

the ALJ's decision. For the following reasons, I deny Edwards's motion and affirm the decision of the Commissioner.

# I. BACKGROUND

The parties have submitted statements of material facts as required by Local Rule 9.1(b). Many of the relevant facts are set out in a previous decision by this court, Edwards v. Berryhill, No. 17-cv-232-AJ, 2018 WL 1221159 (D.N.H. Mar. 7, 2018). I decline to repeat them here in detail. Rather, I focus on facts relevant to this appeal, including facts developed after the previous decision was issued.

## A. Procedural Facts

Edwards filed her current claim for DIB and SSI in February 2012, alleging a disability onset date of May 6, 2009. Tr. at 150. After an initial denial in May 2012, Edwards's claim was heard before ALJ Ruth Kleinfeld in July 2013. Tr. at 173. The ALJ issued an unfavorable decision that November, Tr. at 173–82, which Edwards appealed to the Appeals Council. Tr. at 187. The Appeals Council remanded Edwards's case and another hearing was conducted on November 10, 2015 before ALJ Dory Sutker. Tr. at 1209–77. ALJ Sutker addressed the issues raised by the Appeals Council but ultimately issued another unfavorable decision on December 16, 2015, Tr. at 1111–35.

Edwards's second request for review by the Appeals Council was denied, so she appealed to this court. Tr. at 1141–46. Edwards raised several issues with the ALJ's opinion, including that the ALJ's decision to discount the opinion of examining physician Dr. Frank Graf was not supported by substantial evidence. The ALJ had discounted Dr. Graf's opinion because she found that the responses on Dr. Graf's medical source statement were contradictory, that Dr. Graf's opinions were not supported by the report he prepared, and that Dr. Graf's opinion on Edwards's capacity for sitting was not consistent with Edwards's own testimony. Edwards, 2018 WL 1221159, at *7.

On March 7, 2018, Magistrate Judge Johnstone remanded Edwards's case to the Commissioner on the grounds that none of these reasons was sufficient for discounting Dr. Graf's opinion. Id. First, she found that the apparently contradictory responses in Dr. Graf's statement were most logically explained as an inadvertent transposing of two answers. Id. at *6. Next, she determined that the ALJ's assertion that Dr. Graf's opinions were not supported by evidence was conclusory and that Dr. Graf had, in fact, provided examination findings to back up his conclusions. Id. Finally, she concluded that, while the ALJ had found that Dr. Graf's opinion that Edwards should be limited to one hour of sitting was inconsistent with Edwards's testimony about how she spent her days, Magistrate Judge Johnstone

determined that there was no inconsistency because Edwards had stated that she spent most of her time reclining, and reclining is distinct from sitting. Id. at *7.

Magistrate Judge Johnstone also identified several issues for the Commissioner to address on remand. Id. Specifically, Magistrate Judge Johnstone noted instances where the ALJ misstated Edwards's history of hospitalization, misidentified a non-medical SSA employee as a "medical physician," improperly afforded weight to the fact that Dr. Graf was the only physician who noted an issue with Edwards's right ankle reflexes, and provided insufficient justification for giving "greatest weight" to the opinion of expert medical witness Dr. John Kwock. Id. at *8–9.

On remand, ALJ Sutker conducted a third hearing on November 20, 2018, Tr. at 894–975, and issued an unfavorable decision on February 26, 2019, Tr. at 870–87. The Appeals Council denied review, and Edwards appealed to this court.

B.  **Medical Evidence**

Edwards's disability claim is principally based upon failed back surgeries (in July 2009 and January 2014) and a failed knee replacement (in August 2013). Tr. at 900–01. Edwards has also been diagnosed with mental impairments, such as bipolar disorder, depression, and anxiety. Tr. at 619, 625, 627. In addition to surgical intervention, Edwards has been treated with

numerous prescription medications. See Pl.'s Statement of Material Facts, Doc. No. 8-1 at 1 (listing medications). She also claims to suffer some side effects of these medications related to her memory and motor function. Tr. at 377.

Since at least 2009, Dr. Melissa Hanrahan has treated Edwards for these and other ailments. Tr. at 409. In addition to years of treatment records, Dr. Hanrahan provided two medical opinions relevant to this appeal. First, in June 2013, she completed a form that rated Edwards's limitations in various categories from "Mild or None" to "Extreme." Tr. at 688–89. On this form, Dr. Hanrahan further concluded that Edwards could not sustain an average eight-hour workday because her "severe anxiety [and] panic limits her ability to focus at work." Tr. at 689. Second, in October 2015, Dr. Hanrahan provided a letter that stated that Edwards "could not work a full day due to fatigue, chronic pain and needing to change positions frequently." Tr. at 864.

Dr. Graf performed a consultative examination of Edwards in April 2015. Tr. at 792–801. He identified substantial impairments in Edwards's ability to bend, stoop, lift, and carry, with diminished tolerance for walking. Tr. at 793. Specifically, Dr. Graf opined that Edwards could never lift more than twenty pounds or carry more than ten pounds. Tr. at 795. Additionally, he found that she could only spend one hour

sitting, thirty minutes standing, and twenty minutes walking in
an eight-hour workday, with the remainder of her time to be
spent reclining. Tr. at 796.

At the hearing, ALJ Sutker heard testimony from Dr. Darius
Ghazi, an orthopedic surgeon who had reviewed Edwards's medical
records. Tr. at 920-21. After recounting some of Edwards's
treatment history, Dr. Ghazi opined that Edwards met the
criteria for Listing 1.02A and 1.04C. Tr. at 923. When asked
which objective medical evidence in the record supported a
finding that Edwards could not ambulate effectively, as is
required by 1.02A, Dr. Ghazi stated only that he believed that
anyone with a knee replacement has an inability to ambulate
effectively. Tr. at 925. When asked which objective medical
evidence in the record documented pseudo-claudication, as
required by Listing 1.04C, Dr. Ghazi replied that he "didn't see
anything." Tr. at 926.

Dr. Ghazi opined that Edwards could lift five pounds
frequently and ten pounds occasionally. Tr. at 927. He believed
she could stand and/or walk for two hours at a time for a total
of about four hours in an eight-hour workday, sit for six hours,
and occasionally require a cane to walk. Tr. at 928. Dr. Ghazi
disagreed with several of Dr. Graf's findings. Specifically, Dr.
Ghazi believed that Dr. Graf had overstated Edwards's capacity
for carrying, Tr. at 933, and thought that there was no

objective medical evidence to support Dr. Graf's restrictions on Edwards's use of her arms and her capacity for sitting, Tr. at 936–37.

Edwards had two consultative examinations for her mental impairments: one in May 2012 by Dr. Michael Evans, Tr. at 584–87, and one in May 2015 by Dr. Trina Jackson, Tr. at 782–91. While these two doctors noted that Edwards had had psychological issues in the past, they both found her to have mild to no mental impairments at present. Tr. at 586–87 (listing normal or mildly limited levels of functioning in all categories and a "good" psychiatric prognosis), 785 (noting "good" social skills, "intact" memory and cognition, "good" concentration and persistence, and "mild difficulty with stress tolerance").

## C.    The ALJ's Decision

At step one of the five-step disability evaluation process, ALJ Sutker found that Edwards had not engaged in substantial gainful activity since May 6, 2009, her alleged disability onset date. Tr. at 875. At step two, she found that Edwards had several severe impairments: "chondromalacia and osteoarthritis of the left knee, status post total knee replacement; degenerative disc disease of the lumbar spine; obesity; bipolar disorder; anxiety[;] and depression." Tr. at 875.

Relevant to this appeal, at step three, the ALJ considered whether Edwards's impairments met or equaled Listing 1.02 or

7

1.04.² Tr. at 876. The ALJ recounted the criteria of Listing 1.02 and found that there was "no evidence" to support a finding that Edwards met them. Tr. at 876. The ALJ then recounted the criteria of Listing 1.04 and found that the evidence did not demonstrate that it was "met or medically equaled in this case." Tr. at 876.

After finding that Edwards did not meet or equal any listed impairment, the ALJ formulated her Residual Functional Capacity ("RFC"). Tr. at 878. Specifically, the ALJ determined that Edwards had the RFC to perform sedentary work, subject to several additional restrictions. Relevant to this appeal, she determined that Edwards could "lift and carry ten pounds occasionally and five pounds frequently; sit for a total of six hours and stand and/or walk for four hours total out of an eight-hour workday with normal breaks" Tr. at 878. The ALJ also found that Edwards would need to use a cane at her discretion when ambulating and that, although her "pace is somewhat variable, . . . she is able to stay on task at least 90% of the workday." Tr. at 878.

---

² The ALJ also discussed whether Edwards met the criteria for disability based upon obesity pursuant to SSR 02-01, or listing 12.04 or 12.06, two mental impairments. Tr. at 876. Because Edwards has not challenged the ALJ's determinations on these listings, I decline to discuss them in greater detail.

In reaching this conclusion, the ALJ determined that Dr. Hanrahan's checklist-style form had "little to no probative value because it is not supported by any objective evidence." Tr. at 884. Specifically, the ALJ found that Edwards's daily activities, such as "babysitting, preparing simple meals[,] and performing light household chores" were inconsistent with the Edwards's "allegations of disabling functional limitations." Tr. at 884. With regard to Dr. Hanrahan's 2015 opinion that Edwards "could not work a full day due to fatigue [and] chronic pain and needed to change positions frequently," the ALJ noted that she was "not persuaded" because the opinion was "conclusory in nature, fails to give disabling limitations[,] and is an assessment of [Edwards's] ability to engage in basic work[-]like activities, which is an opinion reserved to the Commissioner." Tr. at 885. Although the ALJ did not assign Dr. Hanrahan's opinion "the controlling weight ordinarily assigned to a treating physician['s] report commenting on the claimant's abilities," she did not ignore Dr. Hanrahan's observations and findings and "carefully considered [them] in providing insight as to functional ability and how they affect [Edwards's] ability to work." Tr. at 885.

The ALJ gave "some weight" to Dr. Graf's 2015 opinion. Tr. at 884. After summarizing Dr. Graf's findings, the ALJ gave Dr. Graf's opinion less weight than would ordinarily be assigned to

an examining physician because "more contemporaneous treatment notes do not support [Dr. Graf's] restrictions in standing and walking. Specifically, physical examinations recently showed no gait abnormalities and described [Edwards] as active in performing daily activities and household chores." Tr. at 884. The ALJ also noted that Dr. Ghazi had disagreed with some aspects of Dr. Graf's report. Tr. at 883. Specifically, Dr. Ghazi could find no evidence to support Dr. Graf's restrictions on Edwards's standing and walking other than her history of reconstructive surgery, and he was unable to find any support in the record at all for Dr. Graf's opined limitations on Edwards's sitting and use of her upper extremities. Tr. at 883.

Overall, the ALJ gave "great weight" to the opinion of Dr. Ghazi, based upon an evaluation several factors, including "supportability, including the degree of explanation and support by objective evidence; consistency with the record as a whole; [and] degree of specialization in the area of medicine involved." Tr. at 883. The ALJ noted that "Dr. Ghazi is an orthopedic surgeon, he has an awareness of all the evidence in the record, and he has an understanding of social security disability programs and evidentiary requirements." Tr. at 883. "Most importantly, his opinion regarding [Edwards's] functional limitations is highly persuasive because it is well-supported by the objective medical evidence." Tr. at 883–84.

The ALJ gave "some weight" to the 2012 opinion of Dr. Evans because "more recent treatment notes showed relatively normal mental status examination and good control of depression and anxiety with prescribed medication." Tr. at 881. She also gave "great weight" to the opinion of Dr. Jackson because she was an examining physician who "had an opportunity to observe [Edwards]." Tr. at 881–82. However, while Dr. Jackson had opined no limitations in Edwards's ability to stay on task during the workday, the ALJ determined that her "persistence and pace is somewhat variable" so she could only be "on task at least 90% of the workday. Tr. at 882.

Having formulated Edwards's RFC, the ALJ determined that Edwards could not perform any of her past work. Tr. at 885. Then, considering Edwards's "age, education, work experience, and residual functional capacity," the ALJ found that there were "jobs that exist in significant numbers in the national economy that [Edwards] can perform." Tr. at 886. This led her to the conclusion that Edwards was not disabled. Tr. at 887.

## II. <u>STANDARD OF REVIEW</u>

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the Commissioner's final decision. <u>See</u> 42 U.S.C. § 405(g). That review "is limited to

determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I "defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." Id. (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). It means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion . . . ." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) (per curiam). The Commissioner's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35. "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of

disability is for [him], not for the doctors or for the courts."
Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal
quotation marks and brackets omitted) (quoting Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981)).

### III. ANALYSIS

Edwards alleges that the ALJ committed reversible error by
(1) failing to give proper weight to the opinion of examining
physician Dr. Graf; (2) failing to give proper weight to the
opinion of Edwards's treating physician, Dr. Hanrahan; and (3)
failing to properly consider whether Edwards's impairments met
or equaled Listing 1.02 or 1.04. Pl.'s Mem. of Law, Doc. No. 8-2
at 1. As explained below, none of Edwards's arguments provides
grounds for remand.

### A. Weight Given to Opinion of Examining Physician Dr. Graf

The ALJ is required to evaluate every medical opinion that
she receives. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Among
those opinions, the Social Security regulations establish a
hierarchy that generally gives greatest weight to opinions of
treating sources, lesser weight to opinions from examining
sources, and least weight to opinions from sources who have
neither examined nor treated a claimant. See 20 C.F.R. §§

404.1527(c)(1)-(2), 416.927(c)(1)-(2).[3] In weighing any medical opinion, the ALJ should consider: (1) the length of the medical source's treatment relationship with the claimant and the frequency of the source's examination of the claimant; (2) the nature and extent of the claimant's treatment relationship with the medical source; (3) the opinion's supportability; (4) the opinion's consistency with the record as a whole; (5) the specialization of the medical source who provided the opinion; and (6) other factors. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "[J]ust as an ALJ may properly decline to give controlling weight to the opinion of a treating source, an ALJ may also discount the weight given to the opinion of an examining source in favor of the opinion of a non[-]examining source." Wall v. Berryhill, No. 18-cv-277-PB, 2019 WL 2723887, at *4 (D.N.H. June 27, 2019) (internal quotation marks omitted).

As noted above, in her prior ruling, the ALJ discounted Dr. Graf's opinion on three grounds, all of which were rejected as insufficient by this court. Edwards, 2018 WL 1221159, at *6. Notably, the magistrate judge considered the rejection of these grounds to be "perhaps a close call." Id. at *5. On remand, the

---

[3] For applications filed on or after March 27, 2017, a new set of regulations governs the evaluation of medical opinions. See 20 C.F.R. §§ 404.1520c, 416.920c. Because Edwards filed her application for DIB and SSI benefits in February 2012, Tr. at 150, the previous regulations govern.

ALJ complied with the magistrate judge's order requiring her not to base her decision on any of the grounds deemed insufficient.

In the ALJ's current ruling, she gave Dr. Graf's opinion "some weight," noting that "Dr. Graf's observations and findings are not ignored and have been carefully considered in providing insight as to functional ability and how they affect the claimant's ability to work." Tr. at 884. The ALJ noted that "more contemporaneous treatment notes do not support [Dr. Graf's] restrictions in standing and walking. Specifically, physical examinations recently showed no gait abnormalities and described the claimant as active in performing daily activities and household chores." Tr. at 884. Edwards challenges the sufficiency of these two reasons for discounting Dr. Graf's opinion and adds that, because Dr. Graf's opinion is consistent with the testimony of Dr. Ghazi, the ALJ should have afforded it greater weight. None of these arguments is persuasive.

1.    Lack of Gait Abnormalities

As an initial matter, Edwards claims that "[t]he ALJ provides no explanation how treatment records provided three years after the first hearing could, in any way, inform her determination that [Dr. Graf's] opinion was inconsistent with the record." Doc. No. 8-2 at 7. This argument fails for at least three reasons.

First, it does not accurately describe the ALJ's ruling, which cites to treatment notes of normal gait both preceding Dr. Graf's opinion, Tr. at 880 (citing August 14, 2014 treatment note at 805), and approximately 16 months thereafter, Tr. at 880 (citing September 16, 2016 treatment note at 1366).[4] Second, Edwards has never alleged any change in her condition between the time of Dr. Graf's opinion and the ALJ's opinion at issue here. To the contrary, at her hearing, Edwards testified that her condition was unchanged. Tr. at 915. Finally, and perhaps most important, the regulations require that the ALJ evaluate the consistency of each medical opinion "with the record as a whole." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ was, therefore, <u>required</u> to determine whether Dr. Graf's opinion was consistent with later treatment records.

Turning to Edwards's argument that a lack of gait abnormalities was an improper reason for the ALJ to afford Dr. Graf's opinion only "some weight," I again find no reason to

---

[4] Edwards faults the ALJ for not appending these citations to her conclusion sentence, where she states that Dr. Graf's opinion is inconsistent with treatment records showing no gait abnormalities. To be sure, remand is appropriate if the ALJ fails to provide specific citations to the record such that meaningful review is not possible. <u>See, e.g.</u>, Jenness v. Colvin, No. 15-cv-005-LM, 2015 WL 9688392, at *7 (D.N.H. Aug. 27, 2015). But the ALJ <u>did</u> provide such specific citations here, and in the same RFC section no less. That the ALJ did not repeat these citations in her conclusion is no impediment to meaningful review of her decision.

disturb the ALJ's conclusion. The ALJ determined that Dr. Graf's opinions on Edwards's ability to stand and walk[5] was inconsistent with records of Edwards's treatment record both preceding and following Dr. Graf's opinion. Tr. at 884. The Commissioner has further identified treatment notes, too numerous to recite in full here, showing no gait abnormalities. These notes are consistent with each other but not with Dr. Graf's opinion. See, e.g., Tr. at 811 (October 6, 2014 treatment note identifying no gait abnormalities), 1425 (March 11, 2016 note stating that Edwards denied gait abnormalities), 1397 (January 6, 2017 treatment note reciting generally normal physical exam results of Edwards's knees and back), 1405 (January 26, 2018 treatment note stating that Edwards denied gait abnormalities).

Edwards correctly points out that there are aspects of the record that are consistent with Dr. Graf's assessment. Doc. No. 8-2 at 8. But I must uphold an ALJ's opinion supported by

---

[5] In an undeveloped argument, Edwards faults the ALJ for not supporting her decision to afford less weight to Dr. Graf's opinion on Edwards's capacity for sitting. The ALJ, however, did address this issue when she discussed Dr. Ghazi's evaluation of Dr. Graf's opinion. Tr. at 883. The ALJ noted that Dr. Ghazi was unable to identify any "persuasive objective evidence" in the record that supported Dr. Graf's limitation, Tr. at 883. Edwards has likewise identified none. This complete lack of support for Dr. Graf's opined limitation is sufficient grounds to reject it. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

substantial evidence even if there is also substantial evidence to support a different conclusion. Irlanda Ortiz, 955 F.2d at 770. The ALJ properly relied upon inconsistencies between the medical record and Dr. Graf's opinion on Edward's ability to stand and walk to discount the weight she gave to that opinion. I decline to overturn her decision on these grounds.

2.    Performance of Daily Activities

Edwards also challenges the ALJ's determination that Dr. Graf's opinion was inconsistent with Edwards's reported performance of daily activities and household chores. Doc. No. 8-2 at 9.[6] Evidence of daily activities inconsistent with a medical source's opinion can constitute "good reasons" for discounting that opinion. See Dimambro v. U.S. Soc. Sec. Admin., Acting Comm'r, No. 16-cv-486-PB, 2018 WL 301090, at *12 (D.N.H. Jan. 5, 2018) (citing Reece v. Colvin, 834 F.3d 904, 910 (8th Cir. 2016)). In concluding that Edwards's daily activities were inconsistent with Dr. Graf's opined limitations, the ALJ cited to instances in the record where Edwards reported "prepar[ing] simple meals and complet[ing] light household chores," Tr. at

---

[6] Here again, Edwards faults the ALJ for not appending citations to her conclusion sentence on this issue. Because the ALJ did include the relevant citations earlier in the RFC section, I conclude for the reasons already stated that this has not impeded meaningful review and is, therefore, not a basis to reject the ALJ's conclusion.

879 (citing Tr. at 372); being able "to stand and walk for longer periods and complete daily chores," Tr. at 880 (citing Tr. at 1451); and being "able to do daily chores and shopping and remain very active," Tr. at 880 (internal quotations omitted) (citing Tr. at 1410, 1425, 1435). Such activities provide substantial evidence for discounting Dr. Graf's opinion that Edwards could walk for no more than twenty minutes and stand for no more than thirty minutes in a day.

In support of her position, Edwards cites to Sanford v. Berryhill, No. 17-cv-246-JL, 2018 WL 4350251 (D.N.H. Sept. 12, 2018), a case where the court rejected the ALJ's decision to give less weight to a medical source because, the ALJ said, the source's opinions were inconsistent with the claimant's daily activities. Sanford, 2018 WL 4350251, at *7. Edwards's argument, however, is unavailing because her situation is unlike the claimant's in Sanford. Like Edwards, the Sanford claimant could cook meals that did not require excessive preparation, but unlike Edwards, the Sanford claimant could not clean, could only shop for a few items at a time once a month, and could no longer engage in any of his former activities. Id. In Sanford, the claimant's daily activities were entirely consistent with the rejected medical source's opined limitations, so it was improper for the ALJ to discount the opinion on those grounds. Id. In this case, Edwards's cleaning, shopping, and other chores are

subject to some limitations, but they are not as limited as the
Sanford claimant's. Edwards is able, for example, to load
groceries into her car at the store and put away everything
except for the groceries that require her to stoop to low
shelves. Tr. at 911–12. The ALJ could reasonably find that her
activities are inconsistent with the rather extreme limitations
opined by Dr. Graf.

Apart from her citation to Sanford, Edwards argues against
the ALJ's discounting of Dr. Graf's opinion principally by
reciting a list of several impairments, such as pain and
numbness, difficulty climbing stairs, use of a cane, inability
to lift her grandson, and difficulty putting away groceries.
Doc. No. 8-2 at 10. To the extent that Edwards argues that these
impairments are inconsistent with "the exertional requirements
of sedentary work," Doc. No. 8-2 at 10, she has confused the
roles of Dr. Graf's medical opinion with the Commissioner's role
in determining a claimant's ultimate ability to perform
sedentary work, see 20 C.F.R. § 404.1527(d)(2). Dr. Graf did not
give an opinion about Edwards's ability to perform sedentary
work, nor would I be able to rely on such an opinion on a
determination reserved for the Commissioner. Id.

To the extent Edwards offers these impairments as
substantial evidence supporting a conclusion different from the
conclusion reached by the ALJ, she misunderstands the standard

that must be met to warrant remand. Because the ALJ's opinion is supported by substantial evidence, I must uphold it, even though the limitations Edwards lists might support a different conclusion. See Irlanda Ortiz, 955 F.2d at 770. As already explained, the ALJ provided good reasons for giving only "some weight" to Dr. Graf's opinion, and Edwards has provided me with no basis to reject those reasons.

3.  Consistency with Dr. Ghazi's Testimony

In what is perhaps her most confusing argument, Edwards contends that the ALJ should have given greater weight to Dr. Graf's opinion because it is consistent with the opinion of Dr. Ghazi, which the ALJ afforded "great weight." Doc. No. 8-2 at 12-13. Edwards cites no authority to support the proposition that an ALJ must give greater weight to a medical opinion if that opinion is consistent with another opinion that the ALJ has given great weight.

Even if Edwards had cited authority for her argument, however, such a case would be inapplicable here because Dr. Graf's opinion differed from Dr. Ghazi's opinion in numerous respects. In some instances, Dr. Graf opined greater restrictions than Dr. Ghazi, including greater limitations on Edwards's sitting and reaching. Compare Tr. at 796-800 (Dr. Graf opining a one-hour limitation on Edwards's sitting and a complete inability to reach overhead) with Tr. at 936, 928 (Dr.

21

Ghazi opining no sitting restrictions and finding no basis for a restriction on reaching). In other instances, it was Dr. Ghazi who opined greater restrictions, including greater limitations on Edwards's lifting. Compare Tr. at 795 (Dr. Graf opining that Edwards could lift no more than twenty pounds) with Tr. at 933 (Dr. Ghazi opining that Dr. Graf had "overstated" Edwards's ability to lift twenty pounds). The ALJ adopted Dr. Ghazi's more stringent limitations on Edwards's lifting and carrying, as well as his less restrictive limitations on her sitting. Tr. at 878. That the ALJ gave "great weight" to Dr. Ghazi's opinion is no basis for me to reject her decision to give Dr. Graf's opinion only "some weight."

In sum, Edwards has provided me with no reason to reject the ALJ's decision to give Dr. Graf's opinion "some weight." I, therefore, decline to overturn the ALJ's decision on that basis.

**B.   Weight given to Dr. Hanrahan's opinion**

The ALJ must give "controlling weight" to the opinion of a treating source if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ does not give controlling weight to a

treating source's opinion, she must give "good reasons" for that decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Good reasons "offer a rationale that could be accepted by a reasonable mind," Levesque v. U.S. Soc. Sec. Comm'n, Acting Comm'r, No. 18-cv-420-LM, 2019 WL 2004298, at *4 (D.N.H. May 7, 2019) (quoting Dimambro, 2018 WL 301090, at *10), and "are both specific . . . and supportable," Dimambro, 2018 WL 301090, at *10 (alternation in original) (citation omitted).

The ALJ discounted the 2013 opinion form submitted by Dr. Hanrahan, Edwards's treating physician, because it was a "checklist-style form" that "includes only conclusions regarding functional limitations without any rationale for those conclusions"; it was "not supported by any objective evidence"; and it was inconsistent with the claimant's "somewhat normal level of daily activity and interaction." Tr. at 884. The ALJ also declined to give controlling weight Dr. Hanrahan's 2015 opinion that Edwards "could not work a full day due to fatigue, chronic pain and need[ing] to change positions frequently" because, the ALJ reasoned, this opinion was "conclusory in nature, fails to give disabling limitations and is an assessment of the claimant's ability to engage in basic work[-]like activities, which is an opinion reserved to the Commissioner." Tr. at 885. The ALJ noted that she did not ignore Dr. Hanrahan's opinion and did incorporate some of Dr. Hanrahan's limitations

(such as Edwards's sensitivity to cold) into her RFC determination.

Edwards faults the ALJ first for discounting Dr. Hanrahan's checklist form and, second, for including in Edwards's RFC a finding that she could stay on task at least ninety percent of the workday, although Dr. Hanrahan had opined greater limitations. Neither argument is persuasive.

1. Dr. Hanrahan's 2013 Checklist Form

"[A] treating provider's opinion may be entitled to less weight when it is in a 'worksheet' or checklist format, unaccompanied by explanation." Gould v. Astrue, No. 11-cv-485-SM, 2012 WL 5378967, at *5 (D.N.H. Oct. 31, 2012) (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)). "When an opinion is given in a cursory fashion, the ALJ can properly give it less weight." McGrath v. Astrue, No. 10-CV-455-JL, 2012 WL 976026, at *5 n.13 (D.N.H. Mar. 22, 2012) (citing Coggon v. Barnhart, 354 F. Supp. 2d 40, 53 (D. Mass. 2005)).

On the form that the ALJ discounted, Dr. Hanrahan checked thirty-three boxes, including nineteen items that limited Edwards's ability to function in a work environment. Tr. at 685–86. In support of these check boxes, Dr. Hanrahan provided only a one-sentence explanation: "Severe anxiety [and] panic limits her ability to focus at work." Tr. at 686. Even if I were to believe the somewhat strained proposition that thirty-three

conclusions can be adequately supported by a single sentence devoid of any detail, I would still struggle to connect a number of Dr. Hanrahan's specific conclusions with her given explanation. For example, a limited ability to focus due to anxiety and panic, standing alone, does not logically explain why Edwards would require "[p]roximity to a bathroom . . . due to urgent urinary/bowel problems" or why "[m]edication side effects would occur and limit work." Tr. at 686. In short, the rationale provided by the ALJ is adequate to explain the limited weight she gave to this form. See Nickerson v. Berryhill, No. 18-CV-559-PB, 2019 WL 2723888, at *7 (D.N.H. June 27, 2019).

Edwards identifies numerous notes in Dr. Hanrahan's treatment records that are consistent with the opinions given on the checklist form. Once again, however, Edwards misapprehends the standard for overturning the ALJ's decision. I must uphold the ALJ's decision if it is supported by substantial evidence, even if there is substantial evidence to support a different conclusion. See Irlanda Ortiz, 955 F.2d at 770. Whatever support in Dr. Hanrahan's treatment notes there may have been for the conclusions she opined on the checklist form, Dr. Hanrahan never identified those notes or articulated connections between them and her conclusions. It would have been error for the ALJ to bridge that gap herself by hunting down and interpreting raw medical data. See Nguyen, 172 F.3d at 35 (noting that "[a]s a

lay person . . . the ALJ was simply not qualified to interpret raw medical data in functional terms"). The ALJ, therefore, gave adequate support for discounting Dr. Hanrahan's 2013 checklist opinion, and I will not overturn her determination to do so.

    2.   <u>The RFC Determination that Edwards Could Stay on Task</u>
        <u>for Ninety Percent of the Workday</u>

As clarified in her Reply, Doc. No. 12, Edwards's contends that it was error for the ALJ to determine that she could stay on task for ninety percent of the workday because the ALJ should have afforded greater weight to Dr. Hanrahan's opinion and crafted a more restrictive RFC. Edwards has not, however, provided any argument for why the ALJ's reasons for discounting Dr. Hanrahan's opinion on this matter were improper. Rather, Edwards cites to Dr. Hanrahan's treatment notes that are consistent with her opinion.

As the Commissioner points out (and Edwards fails to challenge), the ALJ articulated valid reasons for discounting Dr. Hanrahan's opinion on Edwards's ability to stay on task. Namely, she found that it was "conclusory in nature, fails to give disabling limitations[,] and is an assessment of the claimant's ability to engage in basic work[-]like activities, which is an opinion reserved to the Commissioner." Tr. at 885. As already stated above, I must uphold the ALJ's decision regarding the weight given to an expert opinion when that

decision is supported by substantial evidence, even if there is substantial evidence that arguably supports another conclusion. See Irlanda Ortiz, 955 F.2d at 770. Edwards has offered no argument that the ALJ's given reasons for discounting Dr. Hanrahan's opinion are unsupported. The ALJ's ruling on this issue must, therefore, be upheld.

## C.   Listings 1.02 and 1.04

Finally, Edwards argues that the ALJ erred at step three in the analysis by failing to properly consider whether her impairments met or equaled Listings 1.02 and 1.04. Doc. No. 8-2 at 16. Edwards bears the burden of proving, at step three, that she meets or equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "For a claimant to show that [her] impairment matches a [L]isting, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original) (quoting SSR 83-19[7]). As explained below, she has failed to meet that burden with respect to either Listing.

---

[7] SSR 83-19 was rescinded as of August 20, 1980 and replaced by SSR 91-7C, which contains identical language.

1.    Listing 1.02

Edwards specifically contends that the ALJ should have
found that she meets the criteria for 1.02A,[8] which reads in
full:

> 1.02 Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g.,
> subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion
> of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing,
> bony destruction, or ankylosis of the affected joint(s).
> With:
>
> A. Involvement of one major peripheral weight-bearing
> joint (i.e., hip, knee, or ankle), resulting
> in inability to ambulate effectively, as defined in
> 1.00B2b;

20 C.F.R. § 404 Subpt. P, App. 1. "Inability to ambulate
effectively means an extreme limitation in the ability to walk"
and is "defined generally as having insufficient lower extremity
functioning . . . to permit independent ambulation without the
use of a hand-held assistive device(s) that limits the
functioning of both upper extremities." Id. at 1.00B2b(1).
"[E]xamples of ineffective ambulation include . . . the
inability to walk without the use of a walker, two crutches or

---

[8] In her motion, Edwards refers to 1.02B, but the text she quotes
and her argument center around 1.0A. I, therefore, assume, as
the Commissioner did, that this is a typographical error and
evaluate Edwards's argument as it applies to 1.02A.

two canes[; and] the inability to carry out routine ambulatory activities, such as shopping and banking." Id. at 1.00B2b(2).

In support of her argument, Edwards cites to numerous instances in the record of "instability" in her knee, including instances of falling and balance problems. Doc. No. 8-2 at 17–18. These facts fall short of providing substantial evidence that Edwards could not ambulate effectively. To the contrary, there is substantial evidence in the record that Edwards is able to ambulate effectively, as defined in 1.00B2b. Edwards identifies nothing in the record suggesting that she requires the use of a walker, two crutches, two canes, or any other apparatus that restricts her use of both of her upper extremities. She stated, rather, that she only occasionally needs one cane, Tr. at 99–100, 376, 917; and at least two medical sources agreed, Tr. at 114 (Dr. Kwock), 928 (Dr. Ghazi). Moreover, as already discussed, she engages in "routine ambulatory activities, such as shopping." 1.00B2B(2).

No one doubts that Edwards's cannot walk as well as a person with completely healthy knees, but that is not the standard for rejecting the ALJ's decision. The ALJ's determination that Edwards's limitations in her ability to ambulate fell short of Listing 1.02B is supported by substantial evidence. I decline to overturn it.

2.  Listing 1.04

In this section, Edwards primarily argues that the ALJ should have found that she meets the criteria for Listing 1.04A.[9] That Listing refers to:

> Disorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § 404 Subpt. P, App. 1.

While Edwards has identified record evidence supporting a compromised nerve root, Doc. No. 8-2 at 18–19, she has not provided sufficient support for a finding that the other elements of Listing 1.04A have all been met. She identifies, for example, no limitation of motion of her spine. While she points to evidence of decreased sensation, Doc. No. 8-2 at 19, she provides no evidence that it is accompanied by motor loss or atrophy. Edwards identifies sporadic positive straight leg

---

[9] Although Edwards develops no argument on the subject, she references an opinion by Dr. Ghazi that she meets Listing 1.04C. Listing 1.04C requires that the claimant be unable to ambulate effectively. As already discussed, there is substantial evidence to support the conclusion that Edwards can ambulate effectively, as defined by 1,00B2b, so Listing 1.04C does not apply. Edwards offers no argument whatsoever to support a determination that she meets Listing 1.04B.

raises spread out over the eight-year period. Tr. at 413 (2009); 793 (2015); 1464, 1473 (2017). She fails, however, to provide evidence that this impairment continued for any twelve-month period, as is her burden. See Barnhart v. Walton, 535 U.S. 212, 222–23, 122 S. Ct. 1265, 152 L. Ed. 2d 330 (2002) (holding that the "'12 month' duration requirements apply to both the 'impairment' and the 'inability' to work requirements."). The record shows, rather, that these four positive straight leg tests are interspersed with at least twenty-three negative straight leg raise tests throughout the same period. Tr. at 433, 435 (2009); 431, 462 (2010); 821 (2014); 847, 1493, 1511, 1520 (2015); 1402, 1417, 1427, 1442, 1448, 1479, 1489, 1506 (2016); 1397, 1412, 1515 (2017); 1402, 1421, 1431 (2018).

There is substantial evidence to support the ALJ's conclusion that Edwards's impairments do not meet Listing 1.04. I, therefore, decline to overturn the ALJ's determination.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 10) and deny Edwards's motion to reverse (Doc. No. 8). The clerk of court shall enter judgment in accordance with this Memorandum and Order and close the case.

**SO ORDERED.**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 31, 2019

cc:  Edward A. Wicklund, Esq.
     Janine Gawryl, Esq.
     Hugh Dun Rappaport, Esq.